# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

DENNIS R. BELL, II,

    Petitioner,

v.

ROBERT E. McFADDEN, Warden,

    Respondent.

CIVIL ACTION NO.: CV204-111

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Dennis Bell, an inmate currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C.A. § 2241. Respondent filed a Response, and Bell has filed a Traverse. For the reasons which follow, Bell's petition should be **DENIED**.

## STATEMENT OF THE CASE

Bell was taken from state custody on writ to federal court on May 18, 1999. On May 19, 1999, Bell was sentenced to 37 months' imprisonment on federal mail fraud charges, and he was returned to state custody the same day. Bell's state probation was revoked on May 25, 1999, and he was ordered to serve 18 months' imprisonment in a Florida state facility. In September 1999, Bell's attorney filed a motion with the federal court to allow his federal sentence to be served concurrently with his state sentence. That motion was granted in October 1999. (Doc. No. 7, p. 6.) Bell was released from Florida's custody on May 13, 2000, and federal authorities were not notified of Bell's release. Bell was arrested and placed back in federal custody on January 18, 2004. (Doc. No. 7, p. 7.) His projected release date is August 19, 2005. (Doc. No. 7, p. 2.)

In the instant petition, Bell contends that he asked state officials about his federal sentence while he was in a state facility and was told that his federal sentence would have no effect on his release from state prison. In fact, Bell contends that prison officials at the prison camp informed him that his federal sentence, in its entirety, would expire when his state sentence expired. (Doc. No. 1, p. 5.) Bell asserts that state officials never informed him of "any detainers or other obligations which would be necessary to be satisfied regarding his Federal sentence[.]" (Id.) Bell also asserts that he asked again about his federal sentence at least twice after he was transferred to a Community Corrections Center and that he was told on each occasion that his federal sentence would be fully exhausted upon the satisfaction of his state sentence. Bell alleges that he registered with the Orange County Sheriff's Office as a convicted felon, as he was instructed to do upon his release from state custody. Bell also alleges that he returned to his residence in Ocoee, Florida, which was the same residence where he was arrested on federal charges. (Doc. No. 1, p. 6.) Bell further alleges that he visited with his father, who was his co-defendant on the federal charges, at the Federal Prison Complex in Coleman, Florida. Bell contends that he received a traffic ticket and was arrested for assault. Bell avers that he was never informed during any of these encounters with police authorities that he had additional time to serve in federal prison. (Doc. No. 1, p. 7.) Bell asserts that he was arrested on January 18, 2004, by local police for "escape from federal prison." (Doc. No. 1, p. 8.)

Bell contends that he should not have to serve the remainder of his federal sentence because the United States Marshals Service ("USMS") did not appropriately execute his federal sentence and did not file a detainer with state officials. Bell asserts that, even if a detainer was filed, the USMS should have tracked his whereabouts and enforced the

2

detainer upon his release from state prison. In his petition, Bell seeks credit for the time he was "free at liberty" (from the date of his release from state custody until the date he was placed back in federal custody) and his immediate release from federal prison.

## DISCUSSION AND CITATION TO AUTHORITY

Bell asserts that he is entitled to credit for the time he spent "free at liberty" from May 14, 2000, to January 17, 2004. He alleges that the USMS was responsible for executing his federal judgment and commitment order, and, as part of that responsibility, the USMS was obligated to provide state officials with a detainer. Bell also alleges that, even if the USMS issued a detainer and gave it to state officials upon his return to state custody, it still had the duty to monitor his whereabouts while he was in state custody. Bell further alleges that the state of Florida had the duty to enforce any detainer that may have been in place because he brought his federal sentence to the attention of state personnel. (Doc. No. 1, p. 19.) Bell asserts that, after his release from state custody, he had "multiple contacts and exposure to both Federal, local, and State law enforcement officials, [and] on not one occasion was [he] informed of any civil or criminal commitments that were outstanding or otherwise unsatisfied." (Doc. No. 1, p. 20.) Bell alleges that he "had a qualified liberty interest in his continued freedom" given the time he was "free at liberty". (Doc. No. 8, p. 5.) Bell contends that he is entitled to his requested relief based on the doctrine of credit for time at liberty. (Doc. No. 8, p. 6.)

Respondent asserts that the USMS filed a detainer with the Orange County Jail on or about May 24, 1999, where Bell was incarcerated at the time. Respondent also asserts that personnel at the Orange County Jail "[a]pparently" did not forward the USMS' detainer information to the Florida Department of Corrections, and, as a result, federal authorities

3

were not notified of Bell's release from state custody. (Doc. No. 7, pp. 6-7.) Respondent avers that Bell has failed to prove government misconduct and that he is not entitled to his requested relief.

The doctrine of credit for time at liberty was set forth in White v. Pearlman, 42 F.2d 788 (10th Cir. 1930). In Pearlman, the warden of a United States Penitentiary advised a prisoner that his term was about to expire. The prisoner informed the warden that there must have been a mistake because he was sentenced to serve five years. However, the warden "told him that the records showed three years, and he was going to abide by the records." Pearlman, 42 F.2d at 789. The prisoner was released from prison, and he re-established his home. More than two years later, the prisoner was informed that he was "wanted"; he voluntarily returned to prison to serve the remainder of his sentence. Id. The Tenth Circuit affirmed the district court's grant of petition for writ of habeas corpus and determined "that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty." Id.

The Eleventh Circuit has addressed the doctrine of credit for time at liberty, most recently in Little v. Holder, ___ F.3d ___, 2005 WL 90943 (11th Cir. Jan. 18, 2005). The petitioner in Little was serving a state sentence and was temporarily released to federal custody to face charges for using a firearm during the commission of a drug trafficking crime. Little pleaded guilty to the federal charges, and his federal sentence was to run consecutively with his state sentence. Little was returned to state custody after he was sentenced in federal court; however, the USMS never "lodged a detainer with the state", and federal authorities were not notified of his release from state custody. Little, 2005 WL

4

90943, *1. Little was at liberty for nearly four years when he was arrested a second time by the state. This time, the USMS lodged a detainer with the state regarding his outstanding federal sentence. Id. After the expiration of his second state sentence, Little was taken into federal custody to begin service of his federal sentence. Little sought his immediate release from federal prison because "his erroneous release was due to negligence by the Marshals Service", and he should have been credited for the time he was at liberty. Id. The Eleventh Circuit "recognize[d] that some courts grant credit for time at liberty to prisoners who have been forced to serve their sentences in installments through a series of releases and reincarcerations." Id. at *2. The Eleventh Circuit specifically mentioned the Pearlman case and noted its holding that a prisoner cannot be required to serve his sentence in installments. Id. However, the Eleventh Circuit found that Little had "not been forced to serve his federal sentence in installments. Rather, the commencement of his federal sentence was merely delayed. Little has served his federal sentence continuously and without any interruptions since it began[.]" Id.

Much like the prisoner in Little, Bell is not entitled to credit for the time he spent at liberty. "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C.A. § 3585(a). "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences– (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed [ ] that has not been credited against

5

another sentence." 18 U.S.C.A. § 3585(b). However, a sentence cannot run, or must stop running, whenever the prisoner is not in official detention. Thus, the sentence has become "inoperative" because the inmate is not in "official detention." (See Gov't. Ex. 9, Program Statement 5880.28(d)). The Bureau of Prisons has no authority to grant time credit toward the service of a sentence when a prisoner is not in official detention. "Official detention" means that an inmate is in the custody of the Attorney General or the Bureau of Prisons. See Program Statement 5880.28(d); see also 18 U.S.C.A. § 3585(b).

Bell's sentence was inoperative from May 14, 2000, until January 17, 2004, as he was not in official detention during this time period. (Gov't. Ex. 1, p. 3.) The USMS lodged a detainer with the Orange County Jail on or around May 24, 1999, and Classification Officer Diane French received this detainer on May 30, 1999. (Gov't. Ex. 5.) There is no evidence before this Court which indicates that Orange County Jail officials forwarded this detainer to the Florida Department of Corrections. As a result, the USMS was not notified that Bell was released from state custody on May 13, 2000. Bell was erroneously at liberty between that date until the time he was arrested and placed back into federal custody on January 18, 2004. However, it appears that this time Bell spent at liberty was not due to government action that was "so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require" Bell to serve the remainder[1] of his federal sentence. See Mobley v. Dugger, 823 F.2d 1495, 1497 (11th Cir. 1987) (quoting Piper v. Estelle, 485 F.2d 245, 246 (5th Cir.

---

[1] It appears, based on Bell's projected release date of August 19, 2005, that he is required to serve the amount of his federal sentence which did not run concurrently with his state sentence, minus 41 days' jail credit he has received and 145 days' good conduct time he is projected to receive. (Gov't. Ex. 1, p. 3); 18 U.S.C.A § 3585(b).

6

1973)).  Bell is not entitled to credit for the time he was erroneously at liberty, and, accordingly, he is not entitled to his immediate release from federal prison.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Bell's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C.A. § 2241 (Doc. No. 1), be **DENIED**.

**SO REPORTED AND RECOMMENDED**, this 30th day of March, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev 8/82)